Peck, J.
delivered the opinion' of the court.
The act of assembly relied on, is in these words: “In su[ts prosecuted in the name of one person, for the use *298 ano^ler’ ^le Person or persons, bodies politic or corporate, for whose use such suit is brought, shall be held and deemed the real plaintiffs on record, against whom judgment shall be rendered, and execution issued, for the costs they may be liable for, as in other cases.”
This act makes no new rule of evidence. The evil intended to be remedied, was that of making the person interested liable for costs. It is just as fair to suppose the act was made to discourage this form of bringing actions, as to take the converse of the proposition. Many of the cases in court had been prosecuted in the names of irresponsible persons; persons either not known, or residing where the process of execution could not reach them; and it was reasonable that he who had an interest in the suit, should be answerable for the services- rendered on his behalf.
■ But a majority of the court believe, it never was intended to engraft a new rule of evidence; and the rule insisted on, cannot even be had under the act by implication; the term, he “shall be held and deemed to be the real plaintiff,” must be taken in reference to the bur-thens cast upon him, and not with reference to any sup-posed privilege he acquires by the term. It is much more consistent to suppose, that it was the intention of the legislature, to leave him in the condition the act found him, when it was passed, except so far as related to the costs, than to suppose' it was intended to give him the extraordinary right, both of transferring his claim by associating his name with that of another, and then to establish it by his own evidence.
It is scarcely possible to consider of the relation they stand in, without considering them as identical.
If we are to consider the transfer of the right as an assignment in law, if it be made1 for a full and fair consideration, it can be inferred that the transferer is liable upon the assignment; if so, he is directly interested in the event of the suit. 2 Kent’s Com. 374.
*299 No rule should be violated with more caution, than that which forbids that a person should be a witness to establish his demand. The consequence, as has been argued, would be appalling. All stale and doubtful demands and accounts would be handed over for others to sue upon. Cases where, under the book debt law, the right to prove it by the oath of the party within two years, and not afterwards, would be, by such artifice, extended to the term of three or six years. And- it must be seen, that however exalted may be our opinions of the purity of human nature, that here would be let in, to say the least of it, inducements to perjury.
The act, whatever may have been its policy, could not have contemplated such latitude; the deviation would be productive of mischief, in giving the plaintiff a most decided advantage. There being, therefore, no reason for going beyond the intention of the legislature, by mere construction, in making the party his own witness, we will adhere to the obvious intention, by giving the judgment for the costs, when the case arises which shall authorize it.
By this construction, the rules of evidence will remain as the sense of mankind has in past times placed them.
The court below, having erred in the admission of Anderson as a witness, the judgment must be reversed, and the case remanded for a new trial.
Judgment reversed.